IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| LINDA LAUBE, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:02cv957-MHT |
| | ) | (WO) |
| RICHARD F. ALLEN, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

OPINION AND ORDER

This is a class-action lawsuit in which the
plaintiffs, women incarcerated by the Alabama Department
of Corrections, claimed that prison conditions violated
their rights under the Eighth Amendment to the United
States Constitution.  The defendants are the Commissioner
and Treatment Director of the Alabama Department of
Corrections, the wardens of the state prison facilities
that house female inmates, and the Governor of Alabama.
This court approved two four-year settlement agreements
that resolved all the plaintiffs' claims.  Now before the
court are the plaintiffs' two motions for attorney's fees

seeking $ 562,753.70 in fees and $ 62,892.50 in expenses on their first motion and $ 240,843.10 in fees and $ 16,063.08 in expenses on their second motion, for a total sum of $ 882,552.38.  For the reasons that follow, the motions will be granted to the extent that the plaintiffs are entitled to recover $ 420,369.73 in fees and $ 51,496.02 in expenses on their first motion and $ 64,036.62 in fees and $ 2,275.77 in expenses on their second motion, for a total sum of $ 538,178.14.

## I. BACKGROUND

The plaintiffs originally filed this lawsuit in August 2002.  Broadly speaking, the court has characterized their allegations as follows: that, because of conditions at the three state prison facilities that house all female inmates (Julia Tutwiler Prison for Women, the Edwina Mitchell Work Release Center, now known as the Tutwiler Annex, and the Birmingham Work Release Center), female inmates were being denied their basic

human needs of adequate living space, ventilation, and personal safety and security; that, because of the defendants' failure to provide adequate medical and mental-health care, female inmates were at a real and substantial risk of injury, prolonged illness, and premature death; and that the defendants acted with deliberate indifference to the existence of these conditions. Laube v. Campbell (Laube IV), 333 F.Supp.2d 1234, 1237 (M.D. Ala. 2004) (Thompson, J.).

In December 2002, this court granted in part and denied in part the plaintiffs' motion for preliminary injunction: the court held that they were entitled to preliminary-injunctive relief on their claim that they were subject to substantial risk of serious harm caused by Tutwiler's overcrowded and understaffed open dorms, but that they were not entitled to preliminary-injunctive relief on their other claims regarding Tutwiler or on any of their claims regarding the Mitchell and Birmingham facilities.   Laube v. Haley (Laube I), 234 F.Supp.2d

3

1227, 1252 (M.D. Ala. 2002) (Thompson, J.).  Concerned that the unconstitutional conditions at Tutwiler were "so severe and widespread" that they were "essentially a time bomb ready to explode facility-wide at any unexpected moment in the near future," id., the court ordered the defendants to take immediate affirmative steps to redress the unconstitutional conditions and to submit a plan to the court for approval, id. at 1253.

The next 18 months brought a combination of litigation and negotiation.  The defendants submitted a plan, but the court rejected it as inadequate.  Laube v. Haley (Laube II), 242 F.Supp.2d 1150 (M.D. Ala. 2003) (Thompson, J.).  The defendants submitted a second plan, but the preliminary injunction expired before the court ruled on it.  Laube v. Campbell (Laube III), 255 F.Supp.2d 1301 (M.D. Ala. 2003) (Thompson, J.).  The plaintiffs filed a second motion for preliminary injunction but withdrew it after a hearing.  In early 2004, counsel for all parties met informally to discuss

4

settlement, and, in April 2004, formal mediation under the guidance of a United States Magistrate Judge began.

In June 2004, the parties reached final agreement on two four-year settlements: a 'conditions settlement agreement' and a 'medical settlement agreement.' <u>Laube IV</u>, 333 F.Supp.2d at 1248-65. The agreements covered not only the claims on which the court had granted preliminary-injunctive relief, but all the claims brought by the plaintiffs in their complaint as amended. <u>Id</u>. at 1248, 1253. The court provisionally approved the two settlement agreements and ordered that they take immediate effect pending final-court approval. The court then granted class certification, approved notice to the class, held a fairness hearing, and undertook an independent review of the proposed agreements. Under the Prison Litigation Reform Act of 1995 (PLRA), the agreements qualified as "consent decrees" because the court intended to enter them as injunctive relief and retain jurisdiction to enforce them. 18 U.S.C.

§ 3626(g)(1) & (g)(6).  The court therefore could not approve the agreements unless they were narrowly drawn, extended no further than necessary to correct the violation of a federal right, and were the least intrusive means necessary to correct the violation of a federal right.  Id. § 3626(a)(1)(A).  Agreeing with the parties that the settlement agreements met those requirements, the court gave final approval to the agreements on August 23, 2004, and entered a permanent injunction approving the agreements, incorporating their terms into the court's order, permanently enjoining the defendants from failing to carry them out, and retaining jurisdiction to enforce them.  Laube IV, 333 F.Supp.2d at 1247.

On one subsequent occasion, the court was called upon to enforce its judgment, though the parties privately settled their dispute before the court ruled.  On May 10, 2006, the plaintiffs filed a motion to hold the defendants in contempt for failure to comply with the

6

medical-settlement agreement.  The contempt motion was based largely on the reports of the independent health monitor, whose role under the agreement was to audit the defendants' compliance and report his findings.  The healthcare monitor issued reports of non-compliance over a period of approximately 15 months, beginning in December 2004.  During the period preceding the contempt motion, the plaintiffs communicated their concerns to the defendants, specifically in written letters dated October 28, 2004, April 22, 2005, September 23, 2005, and March 14, 2006.  Additionally, as required by the consent decree, the parties engaged in mediation before the magistrate judge on November 18, 2005.  On May 10, 2006, after the correspondence and mediation described above did not resolve matters to the plaintiffs' satisfaction, they filed their motion to hold the defendants in contempt.  The court scheduled an evidentiary hearing for June 21, 2006, which was postponed upon notice by the parties that a private settlement was in the making.  On

7

August 3, 2006, the parties announced to the court that they had arrived at a private settlement agreement. Consequently, the court entered an order denying as moot the plaintiffs' motion to hold the defendants in contempt.

The consent decrees, while contemplating that the parties would attempt to resolve privately the issue of attorney's fees, provided that the plaintiffs could petition the court if an agreement on that issue could not be reached.  The parties could not reach an agreement on fees, and, on September 22, 2004, the plaintiffs timely filed a motion for attorney's fees and costs incurred through August 23, 2004, the date that the settlement agreements were approved and made final.  On August 24, 2006, they filed a second motion for attorney's fees; the second motion addressed fees and expenses incurred litigating the fees issue and monitoring and enforcing the decrees during the two-year

period following the entry of final judgment. This opinion addresses both motions.

## II. LEGAL STANDARD FOR ATTORNEY'S FEES

In federal civil-rights litigation, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b); see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001) (statutory fee-shifting provisions from different statutes have been interpreted consistently). "Determining a plaintiff's entitlement to attorney fees entails a three-step process. First, a court asks if the plaintiff has 'prevailed' in the statutory sense. Second, the court calculates the 'lodestar,' which is the number of hours (tempered by billing judgment) spent in the legal work on the case, multiplied by a reasonable market rate in the local area. Finally, the court has the opportunity to

adjust the lodestar to account for other considerations that have not yet figured in the computation, the most important being the relation of the results obtained to the work done." Dillard v. City of Greensboro, 213 F.3d 1347, 1353 (11th Cir. 2000) (citations omitted).

The fee applicant bears the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988). This burden includes supplying the court with specific and detailed evidence from which it can determine the reasonable hourly rate, maintaining records to show the time spent on the different claims, and setting out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999).

A fee applicant should also exercise "'billing judgment.'" Id. at 428 (quoting Hensley v. Eckerhart,

461 U.S. 424, 434 (1983)).  That is, the applicant should

"exclude from his fee applications 'excessive, redundant,

or otherwise unnecessary [hours],' which are hours 'that

would be unreasonable to bill to a client and therefore

to one's adversary irrespective of the skill, reputation,

or experience of counsel.'"   Id. (quoting Norman, 836

F.2d at 1301) (citation omitted).

   "Those opposing fee applications have obligations,

too.  In order for [district] courts to carry out their

duties in this area, 'objections and proof from fee

opponents' concerning hours that should be excluded must

be specific and 'reasonably precise.'"   Id. (quoting

Norman, 836 F.2d at 1301).

   In making the above determinations, the court is

guided by the twelve factors set out in Johnson v.

Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th

Cir. 1974), and approved in Blanchard v. Bergeron, 489

U.S. 87, 91-92 (1989).  These factors are: (1) the time

and labor required; (2) the novelty and difficulty of the

questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

In prisoner litigation, attorney's fees awards are modified by the PLRA, 42 U.S.C. § 1997e:

> "In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that--
>
>> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute

12

> pursuant to which a fee may be
> awarded under section 1988 of this
> title; and
>
> (B)(i) the amount of the fee is
> proportionately related to the
> court ordered relief for the
> violation; or
>
> (ii) the fee was directly and
> reasonably incurred in enforcing
> the relief ordered for the
> violation."

42 U.S.C. § 1997e(d)(1).  Subsections (d)(1)(A) and (d)(1)(B)(i) cover attorney's fees for pre-judgment work, while subsection (d)(1)(B)(ii) covers fees for post-judgment enforcement.  Furthermore, the PLRA provides that all such fees shall not be "based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel."  Id. § 1997e(d)(3).

### III. DISCUSSION

### A. First Motion for Attorney's Fees

The plaintiffs have submitted itemized billing statements in support of their first motion for attorney's fees. In response to the defendants' objections, they have made certain adjustments. Their current fee request can be broken down as follows:

|                      | Hours    | Rate            | Subtotal       |
|----------------------|----------|-----------------|----------------|
| Attorney Caldas      | 765.25   | $ 169.50 / hr   | $ 129,709.90   |
| Attorney Kung        | 1,070.85 | $ 169.50 / hr   | $ 181,509.10   |
| Attorney Rohr        | 493.30   | $ 169.50 / hr   | $ 83,614.35    |
| Attorney Schulz      | 257.90   | $ 169.50 / hr   | $ 43,714.05    |
| Paralegal Filley     | 908.60   | $ 120.00 / hr   | $ 109,032.00   |
| Paralegal Siemon     | 200.20   | $ 110.00 / hr   | $ 22,033.00    |

| Paralegal Rohr[1] | 227.60 | $ 100.00 / hr | $ 22,760.00 |
|---|---|---|---|
| TOTAL HOURS | 3,923.8 | | $ 592,372.40 |
| 5 % Reduction (Inadequate Billing Detail) | | | $ 562,753.70 |
| Expenses | | | $ 62,892.50 |
| TOTAL FEES | | | $ 625,646.20 |

### 1. Prevailing Party

The first inquiry in determining a party's entitlement to attorney's fees is whether the party has 'prevailed' in the statutory sense. <u>Dillard</u>, 213 F.3d at 1353. The prevailing party inquiry is governed by <u>Buckhannon</u>, 532 U.S. 598, and the circuit law that implements it. "It is now established that in order to be considered a prevailing party under § 1988(b), there must be a court-ordered material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees. In other words, there must be: (1) a

_____

1. In light of the fact that attorney Rohr was not admitted to the bar when she began work on this case, the plaintiffs request that her pre-admission hours be billed as paralegal hours. The court discusses this issue in Subsection III.A.3.b, <u>infra</u>.

situation where a party has been awarded by the court at least some relief on the merits of his claim <u>or</u> (2) a judicial <u>imprimatur</u> on the change in the legal relationship between the parties." <u>Smalbein v. City of Daytona Beach</u>, 353 F.3d 901, 904-05 (11th Cir. 2003) (internal quotation marks, ellipses, and citations omitted). This second option, the "judicial imprimatur," requires a settlement agreement the court has approved, either by incorporating the terms of the settlement into the final judgment or by explicitly retaining jurisdiction to enforce the terms of the settlement. <u>Id</u>. at 905 (citing <u>Am. Disability Ass'n v. Chmielarz</u>, 289 F.3d 1315, 1320 (11th Cir. 2002)).

Here, there has been a court-ordered material alteration in the legal relationship between the plaintiffs and defendants in the form of two comprehensive settlement agreements approved by this court, both because the court incorporated the terms of the agreements into the final judgment and because the

16

court explicitly retained jurisdiction to enforce them.
Therefore, the plaintiffs are prevailing parties within
the meaning of § 1988(b).


## 2. Number of Hours

The court will next address the number of hours
billed by the plaintiffs' litigation team for its work on
this case.  There are many issues in dispute in this
area, which the court divides into four general
categories.  First, the parties disagree on the meaning
of the PLRA's requirement that the fee be "directly and
reasonably incurred in proving an actual violation of the
plaintiff's rights."  42 U.S.C. § 1997e(d)(1)(A).
Second, the parties disagree on the extent to which the
plaintiffs' recovery should be reduced for their failure
to set out with sufficient particularity the tasks
undertaken and the amount of time spent on each task.
Third, the defendants argue that this case was
overstaffed and that the hours billed should be reduced

17

accordingly, whereas the plaintiffs vigorously contest that characterization. Fourth, the defendants' line-by-line analysis of the plaintiffs' billing statements challenges numerous entries as unnecessary, clerical tasks, not related to this case, or non-compensable for some other reason. Several of the 12 <u>Johnson</u> factors are subsumed in these four categories, and to the extent they are not the court has considered all the <u>Johnson</u> factors in reaching a final determination as to the number of hours that should be awarded.


### a. PLRA

Ordinarily, the number of hours used for the lodestar figure is "'the number of hours reasonably expended on the litigation.'" <u>ACLU v. Barnes</u>, 168 F.3d at 427 (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 888 (1984)). <u>See also Dillard</u>, 213 F.3d at 1353 ("the number of hours (tempered by billing judgment) spent in the legal work on the case"). In <u>Hensley v. Eckerhart</u>, 461 U.S. 424

(1983), the Supreme Court held that "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." 461 U.S. at 440. It appears, however, that the PLRA has somewhat redefined this approach in prisoner litigation. Under the PLRA, the fee must be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and "proportionately related to the court ordered relief for the violation." 42 U.S.C. § 1997e(d)(1).

Unfortunately, that provision of the PLRA is "'not a paragon of clarity,'" Cody v. Hillard, 304 F.3d 767, 776 (8th Cir. 2002) (quoting Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 654 (1st Cir. 1997)), particularly in the context of relatively complex litigation, such as this one, that consists of multiple motions, hearings, adversarial contests, and finally two court-approved and -enforced settlement agreements. In

19

fact, the PLRA raises questions regarding two broad areas of this case. First, does the PLRA permit attorney's fees for any time spent on a case that is settled without a judgment of liability against the defendants? Second, if the PLRA does permit fees in such a case, should the compensable hours be reduced on account of the plaintiffs' limited success in various stages of the litigation prior to settlement?

Whether a fee is "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" is inevitably a matter of some interpretation--both statutory interpretation and an interpretation of what occurred in the litigation. The court must do its best to award attorney's fees consistent with the language of the statute and the intent of Congress in enacting the PLRA, given the complexity of this litigation.

### i. Consent Decrees

The court first addresses whether the PLRA allows attorney's fees in a case, such as this one, that did not proceed to trial but was resolved with two comprehensive court-approved settlement agreements. The defendants concede, in general, the plaintiffs' entitlement to some attorney's fees in this case, even for work done after the preliminary injunction. In fact, although the defendants argue that the plaintiffs sent too many lawyers to mediation, they never contend that the plaintiffs are not entitled to reasonable attorney's fees for work done in reaching the settlements. However, because the defendants challenge so many other aspects of the plaintiffs' fee request, the court thinks it wise to establish the contours of the plaintiffs' right to fees for time spent on a case that does not result in judgment on the merits. But the court emphasizes that its reason for doing so is to lay a rational foundation for its rulings on the defendants' specific objections, not to

reach a holding on the question, not raised by the parties, of whether the PLRA allows attorney's fees for cases settled by consent decree.

At first blush, the text of the PLRA is not clear on what to do about attorney's fees in a case so settled. In directing that the fee be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," 42 U.S.C. § 1997e(d)(1)(A), Congress did not clarify what it means to incur fees "in proving" such a violation in the context of a case such as this one. Arguably, a consent decree does not suggest that the plaintiffs have proved anything, because the object of settlement is to resolve claims without additional litigation. On the other hand, plaintiffs with highly meritorious claims would be strongly discouraged from settling if they could not obtain attorney's fees unless they dragged defendants and courts through the expensive and time-consuming process of a full-blown trial. It is

difficult to believe that Congress intended to discourage efficient settlements of meritorious claims.

When interpreting a statute, and especially where the plain text is unclear, the court looks to the language and design of the statute as a whole for context and clarification. <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184, 1204 (11th Cir. 2007); <u>United States v. McLemore</u>, 28 F.3d 1160, 1162 (11th Cir. 1994). Here, the court refers to another section of the PLRA, 18 U.S.C. § 3626, which governs court-ordered prospective relief. According to the statute:

> "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

18 U.S.C. § 3626(a)(1)(A).  The statute also expressly provides that these prospective-relief requirements apply to cases (such as this one) in which the parties enter into a judicially-enforceable consent decree, as opposed to a private settlement.  Id. § 3626(c) & (g).  It therefore appears that Congress intended to encourage judicially-enforceable settlement, but only to the extent that it meets the three-part 'need-narrowness-intrusiveness' test described above.  By reading the PLRA's attorney's-fees provision, 42 U.S.C. § 1997e(d), in the context of the PLRA's prospective-relief provision, 18 U.S.C. § 3626, the court infers that Congress was motivated by the same interest in crafting both parts of the statute: ensuring that courts award prisoners relief, either in the form of an injunction or accompanying attorney's fees, only when there is arguably an actual violation of their rights, albeit without a requirement that such a violation be conclusively established by admission or adjudication on the merits.

Therefore, when a court approves a consent decree and finds that it meets the 'need-narrowness-intrusiveness' test, which the court did in this case, <u>Laube IV</u>, 333 F.Supp.2d at 1239, it can also award attorney's fees without in any way undermining the PLRA's requirement that such fees be "incurred in proving an actual violation of the plaintiff's rights." The 'need-narrowness-intrusiveness' test directs the court to ensure that the scope of the settlement is limited to addressing federal rights, while the PLRA's attorney's-fee provision restricts fees to those incurred in securing a settlement agreement so limited.

Additionally, the court thinks it significant that the PLRA's attorney's-fee language does not require that the fee be incurred in <u>having proved</u> an actual violation of the plaintiff's rights, only that the fee be incurred in <u>proving</u> a violation. "Proving," as used in the statute, is a present participle, which denotes action that is continuing or progressing, as distinct from

"having proved," a perfect participle that denotes completion.  John B. Opdycke, <u>Harper's English Grammar</u> 141 (rev. ed. 1966).  By employing the present participle rather than the perfect participle, Congress left room for prevailing plaintiffs to recover attorney's fees for work recognized to be part of the <u>process</u> of proving an actual violation even if that process ends in a court-approved consent decree rather than a judgment of liability.  If Congress had wanted to eliminate altogether attorney's fees for prevailing parties when the case ends in consent decree rather than a judgment on the merits, it could have easily required that such fees be directly and reasonably incurred in <u>having proved</u>, rather than in <u>proving</u>, an actual violation of the plaintiff's rights.

Consequently, as to each fee item the defendants challenge in this case, the principal inquiry this court will perform is whether it was directly and reasonably incurred in securing the prospective relief--that is, the

settlement agreements--ordered by this court.  42 U.S.C. § 1997e(d)(1)(A).  The court will also ensure that all fees recovered are "proportionately related" to the relief ordered under the consent decrees.  Id. § 1997e(d)(1)(B)(i).  In doing so, the court is confident that such fee awards comply with the PLRA.  The court adds that the defendants' response to the plaintiffs' fee application is generally consistent with this interpretation.

### ii. Fees Incurred During Various Stages of the Litigation

The court next addresses whether the plaintiffs can recover attorney's fees for time spent on various tasks before settlement.  The defendants have challenged the plaintiffs' fee request for work relating to: (a) the preliminary injunction; (b) objections to the defendants' second remedial plan; (c) the plaintiffs' motion to compel; (d) non-state defendants; and (e) experts who did not testify.

### (a) Preliminary Injunction

Regarding the work leading up to the court's preliminary injunction, the defendants argue that the plaintiffs cannot recover fees for all these hours because they did not prevail on significant portions of their preliminary-injunction motion. The court agrees to some extent.

In requiring that fees be "directly and reasonably incurred in proving an actual violation of the plaintiff's rights" and "proportionately related to the court ordered relief for the violation," 42 U.S.C. § 1997e(d)(1), Congress intended that plaintiffs should be compensated for time spent obtaining preliminary-injunctive relief but should not be fully compensated when such relief is granted only in part. However, when work done before the preliminary injunction is also work that directly contributes to obtaining permanent-injunctive relief, such work should not go uncompensated

**28**

simply because a motion for preliminary injunction was granted only in part. For example, time spent drafting a complaint should be fully compensated when plaintiffs obtain permanent-injunctive relief on all claims, even if preliminary-injunctive relief is denied on some claims. However, time spent drafting the motion for preliminary injunction and preparing for an evidentiary hearing on that motion should be compensated only in proportion to the plaintiffs' success in obtaining preliminary-injunctive relief. Tasks such as client interviews, investigation, and discovery fall somewhere in between: they should be compensated to the extent that they contribute to the permanent injunction, but not to the extent that they were useful only in seeking preliminary-injunctive relief on claims that were unsuccessful at that stage of the litigation.

In this case, the plaintiffs obtained preliminary-injunctive relief on some but not all of their claims regarding Tutwiler and did not obtain preliminary-

injunctive relief on any of the claims regarding the Mitchell and Birmingham facilities. Therefore, the court should award fees for time spent on the unsuccessful claims only to the extent that the work on those claims contributed to the final consent decrees. As for time spent on tasks that were useful only for the preliminary-injunction phase of the case (such as drafting and arguing the motion), the court should reduce the fees so as to be proportionately related to the injunctive relief obtained.

Given that this fee application is voluminous, as well as the complexity of this case and the lack of detail in some of the line items, the court has determined that a line-by-line excision of hours is not appropriate for this task. See Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). Instead, the court will make an across-the-board percentage cut to the number of hours billed through October 10, 2002, the date of oral arguments on the motion for preliminary injunction and

the date on which the billing statement reads "END OF PRELIMINARY INJUNCTION TIME."  See id.  In applying an across-the-board percentage cut, the court aims to simulate the effect of a line-by-line analysis while avoiding the waste of judicial resources that such an impractical approach would entail where billing records are voluminous.  Id.  To that end, the court has reviewed the billing records in an attempt to estimate how many hours the plaintiffs would have spent prior to the motion for preliminary injunction had they sought preliminary-injunctive relief only on their claim that they were subject to substantial risk of serious harm caused by Tutwiler's overcrowded and understaffed open dorms.  The court concludes that the number of hours billed through October 10, 2002, should be cut in half and accordingly subtracts 131.325 hours from attorney Caldas, 162.3 hours from attorney Kung, and 117.6 hours from paralegal Filley.

31

(b) <u>The Second Remedial Plan</u>

Next, the defendants argue that the plaintiffs cannot recover attorney's fees for time spent challenging the defendants' second remedial plan.  In granting preliminary-injunctive relief on December 2, 2002, the court ordered the defendants to file a plan that redressed immediately and fully the unconstitutional conditions at Tutwiler.  On January 29, 2003, the court rejected the defendants' plan and ordered them to submit a new one.  The defendants did so on February 21, and the court took the matter under consideration, including the plaintiffs' argument that the second plan, too, was inadequate.  On March 28, however, the court concluded that it could neither accept nor reject the proposed plan because the preliminary injunction had expired under the PLRA's 90-day limitation on preliminary-injunctive relief.  <u>Laube III</u>, 255 F.Supp.2d 1301.

The court agrees with the defendants that, under the PLRA, time spent challenging the defendants' second

**32**

remedial plan is non-compensable.  Two considerations animate the court's conclusion in this regard.  First, these are not fees directly and reasonably incurred in securing any form of court-ordered relief.  Second, reading the PLRA as a whole, it is clear that Congress intended to limit litigation over preliminary-injunctive relief to the 90-day expiration period.  If Congress intended to so limit preliminary injunctions, and also provided that attorney's fees be directly and reasonably incurred in proving the violation of a federal right, it stands to reason that Congress did not intend for plaintiffs to recover attorney's fees for time spent litigating preliminary-injunction issues beyond the statutory 90-day expiration period for preliminary injunctions.

The court will therefore subtract from the plaintiffs' billing statements those hours identified as relating to the defendants' second remedial plan.  The court subtracts 13.4 hours from attorney Caldas, 42.1

hours from attorney Kung, and 1.2 hours from paralegal Filley.

### (c) Plaintiffs' Motion to Compel

The defendants also argue that the plaintiffs cannot recover attorney's fees for time spent on an unsuccessful motion to compel. Several discovery disputes arose during the course of this litigation. On June 24, 2003, the plaintiffs filed a motion to compel the production of certain documents relating to housing female prisoners in out-of-state facilities. The magistrate judge ordered briefing, heard oral arguments, and, on November 20, 2003, entered an order denying the plaintiffs' motion.

The court agrees with the defendants that the plaintiffs cannot recover fees for time spent on this unsuccessful motion to compel. These are not fees directly and reasonably incurred in proving any rights violation or in securing any form of court-ordered relief.

The court will therefore subtract from the plaintiffs' billing statements those hours identified as relating to the plaintiffs' June 24, 2003 motion to compel. The court subtracts 6.8 hours from attorney Caldas, 2.2 hours from attorney Kung, and 5.4 hours from attorney Rohr.

### (d) Non-State Defendants

Next, the defendants argue that the plaintiffs cannot recover fees for time spent on issues relating to non-state defendants. In the plaintiffs' initial complaint, they named NaphCare, Inc. and its medical director, Francis Henderson, as defendants. In an amended complaint, they dropped all claims against NaphCare and Henderson. In a second amended complaint, NaphCare and Henderson were named again, along with MHM Correctional Services, Inc., another private company under state contract to provide mental-health care to prisoners. The non-state defendants filed motions to

35

dismiss, but these were denied by the court.
Subsequently, however, the plaintiffs stipulated to the
dismissal without prejudice of all three non-state
defendants: MHM was dismissed without prejudice on
October 1, 2003, and NaphCare and Henderson were
dismissed without prejudice on December 16, 2003.

The court agrees to some extent with the defendants
as to the non-compensability of certain matters relating
to NaphCare, Henderson, and MHM.  Where a fee is not
directly and reasonably incurred in securing any form of
relief, it is non-compensable.  Furthermore, because the
non-state defendants were dismissed from this case, fees
relating to discovery disputes between the plaintiffs and
the non-state defendants are not compensable from the
state defendants that remained parties to this
litigation.  Examples of non-compensable matters include:
the amended and second amended complaints; the non-state
defendants' motions to dismiss; the non-state defendants'

motion for a more definite statement; and the plaintiffs'
motion to compel discovery by the non-state defendants.

However, to the extent that the plaintiffs billed
time in obtaining medical records and other information
directly relevant to health-care conditions at the
prisons, those fees were directly and reasonably incurred
in obtaining the court-ordered relief contained within
the medical-settlement agreement.  As the plaintiffs
note, the ultimate responsibility for constitutional
prison conditions is the State's, regardless of whether
certain prison services have been privatized.  Therefore,
the state defendants cannot avoid paying attorney's fees
for all line items containing the word "medical."  Fees
directly related to medical conditions in the prisons, as
opposed to fees incurred while litigating procedural
matters, are compensable.  Examples of compensable
matters include: reviewing and obtaining, through a
cooperative discovery process, medical and mental-health
documents; depositions relating to medical and mental-

health services; and staff meetings regarding the plaintiffs' medical claims and medical conditions at the prisons.

The court has reviewed the billing statements, line-by-line, in accordance with the above principles. The court subtracts 39.2 hours from attorney Caldas, 43.4 hours from attorney Kung, 0.2 hours from attorney Rohr, and two hours from paralegal Filley.

### (e) Experts

The defendants argue that the plaintiffs cannot recover attorney's fees for time spent consulting with experts who did not testify. In support of this argument, the defendants cite case law that prohibits the recovery of expert fees for experts who do not testify. Webster Greenthumb Co. v. Fulton County, 112 F.Supp.2d 1339, 1382-83 (N.D. Ga. 2000) (Thrash, J.). Here, however, the plaintiffs do not seek compensation for the

experts themselves; rather, they seek fees for the attorneys' time consulting with the experts.

The court rejects the defendants' objection to compensating the plaintiffs for this time. Although it is true that these experts did not testify, the reason for that fact is obvious: the plaintiffs' claims were resolved without need for a trial. The question, then, is whether attorney's fees for time spent consulting with experts were directly and reasonably incurred in obtaining the court-ordered relief that made a trial unnecessary.

The court answers that question in the affirmative. As previously discussed, the PLRA does not permit court-ordered relief unless it is narrowly drawn, extends no further than necessary, and is least intrusive. 18 U.S.C. 3626(a)(1)(A). Given these constraints, combined with the wide-ranging scope of the plaintiffs' complaint, consultation with experts was arguably necessary in order to fashion a comprehensive remedy that met the

39

requirements of the PLRA and afforded the plaintiffs the relief they needed to be free of unconstitutional prison conditions.   The court will therefore award attorney's fees for the time requested relating to experts.


b. Lack of Detail in Billing Statements

As previously stated, a party seeking attorney's fees must provide a billing statement that sets out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity.   ACLU v. Barnes, 168 F.3d at 427.   In addition, the fee-seeker may not "lump together all the tasks performed by an attorney on a given day without breaking out the time spent on each task."   Id. at 429.

The plaintiffs acknowledge that their billing statements do not always contain sufficient particularity to pass muster.   Instead of making line-by-line cuts to the billing statement, they suggest that the court

compensate the defendants for this problem by making an across-the-board fee reduction of 5 %.  See Loranger, 10 F.3d at 783.  The defendants agree that an across-the-board reduction, rather than a line-by-line analysis, is appropriate.  However, they argue that 5 % is not enough; they urge the court to cut 25-30 %, if not more.

As previously discussed, in applying an across-the-board percentage cut, the court aims to simulate the effect of a line-by-line analysis while avoiding the waste of judicial resources that such an impractical approach would entail where billing records are voluminous.  Id.  To that end, the court has reviewed the billing records in an attempt to estimate how many hours would be subtracted from the plaintiffs' fee request on account of a lack of detail in their billing statements. In addition to the "lumping" problem acknowledged by the plaintiffs, the court has considered the defendants' complaint that certain descriptions are not detailed

enough to determine whether the matter is compensable or
not.

Rather than apply an across-the-board cut to the
entire fee request, the court prefers to examine each
timekeeper's billing statement to assess whether it has
been prepared in accordance with the Barnes requirements.
The billing statements of attorneys Kung and Caldas and
paralegal Filley contain enough detail; the court will
not reduce their hours.  The billing statements of
attorneys Rohr and Schulz, however, do suffer from some
of the problems identified by the defendants, and the
court will apply a 15 % reduction to their hours.
Moreover, the billing statement of paralegal Siemon is
sorely lacking in the detail the court would require in
order to determine how many of her billed hours are
compensable; it appears she has "lump[ed] together all
the tasks performed ... on a given day without breaking
out the time spent on each task."  Barnes, 168 F.3d at
429.  This is exacerbated by the fact that some of her

**42**

tasks are non-compensable clerical tasks.  The court therefore applies a 50 % reduction to her hours.

### c. Overstaffing

Next, the defendants challenge the number of hours billed on the grounds that the plaintiffs overstaffed this case.  The defendants challenge, in particular, the plaintiffs' decision to devote four attorneys to the mediation process, arguing that two attorneys (Kung and Caldas) could have accomplished this task.

The court must reject the defendants' overstaffing challenge.  "The retaining of multiple attorneys in a significant, lengthy ... case such as this one is understandable and not a ground for reducing the hours claimed. The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work.... An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and

the customary practice of multiple-lawyer litigation."
Johnson v. University College, 706 F.2d 1205, 1208 (11th
Cir. 1983).   The court has reviewed the affidavits of
attorneys Rohr and Schulz, who explain the reasons why
they were both present, in addition to attorneys Kung and
Caldas, at mediation.   The court finds those explanations
enlightening and satisfactory.

Equally important, judicial policy favors settlement
of class-action cases, Laube IV, 333 F.Supp.2d at 1238
(citing Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir.
1977),[2] and the defendants' overstaffing challenge is
focused largely on the hours billed in the weeks leading
up to a negotiated settlement.   The court is highly
impressed with the comprehensive settlement agreements
the parties were able to reach in this case, especially
in light of the controversial nature of the lawsuit, the

_____

2.   In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th
Cir. 1981) (en banc), the Eleventh Circuit Court of
Appeals adopted as binding precedent all of the decisions
of the former Fifth Circuit handed down prior to the
close of business on September 30, 1981.

complexity and wide-ranging scope of the claims, and the
pressures both sides were under to achieve their desired
outcomes.  Given this background, the court finds that
the plaintiffs did not overbill for mediation or staff
the case with too many attorneys.  No time will be
deducted on account of overstaffing.


### d. Other Line-by-Line Challenges

The court will now review the defendants' other line-
by-line challenges to the plaintiffs' billing statements.
The court begins with clerical tasks.  Tasks not
traditionally done by an attorney should be included in
the "routine office overhead normally absorbed by the
practicing attorney."  <u>Dowdell v. City of Apopka</u>, 698
F.2d 1181, 1192 (11th Cir. 1983).  <u>See</u> <u>Black v. M.G.A.,
Inc.</u>, 51 F.Supp.2d 1315, 1324 (M.D. Ala. 1999) (Thompson,
J.); <u>Reynolds v. Ala. Dep't of Transp.</u>, 926 F. Supp.
1448, 1456 (M.D. Ala. 1995) (Thompson, J.).  Having
received the defendants' objections, the plaintiffs have

deleted certain hours from their fee request for attorney Rohr and paralegal Siemon.  They have also provided more detailed explanation as to the fee request for paralegal Siemon; the court finds that Siemon's computerized management of discovery matters is compensable, though, as previously stated, her hours will be cut by 50 % for an inadequately detailed billing statement.  The court furthermore agrees with the defendants that certain hours remain in the plaintiffs' fee application that are clerical in nature and therefore non-compensable, though the court is not in agreement with the defendants as to all the hours they labeled clerical.  Having undertaken a line-by-line review, the court subtracts an additional 3.5 hours from attorney Caldas, one hour from attorney Kung, and 57.3 hours from paralegal Filley.

Next, the court considers the defendants' challenge to hours they deem "unnecessary."  Although the defendants have labeled certain billing entries as unnecessary, they have not explained their objections in

any greater detail.  The court has reviewed the billing statements and agrees that only a few of these entries should not be billed.  The court subtracts 0.6 hours from attorney Caldas and 0.7 hours from attorney Kung.

Next, the court considers the entries challenged by the defendants as not providing enough information for them to decide whether the time is compensable.  For attorneys Rohr and Schulz and paralegal Siemon, this concern is incorporated by the across-the-board cuts previously announced.  For attorneys Caldas and Kung and paralegal Filley, the court employs a line-by-line approach.  The court subtracts 4.4 hours from attorney Caldas, 8 hours from attorney Kung, and 3.9 hours from paralegal Filley.

Lastly, the court addresses the items defendants challenge as not related to this case--that is, alleged billing errors.  It would have been helpful had the plaintiffs responded and either acknowledged that these hours were billed to the wrong account or provided a

47

fuller explanation of why they were properly billed in this case.  Absent any such response from the plaintiffs, the court has undertaken its own review of the challenged hours and has determined which hours should be subtracted.  Although the court does not delete all the challenged entries, it agrees that some of the challenged entries are either billing errors or not descriptive enough to entitle the plaintiffs to fees.  The court subtracts 2.85 hours from attorney Caldas, 4.5 hours from attorney Kung, 8.1 hours from attorney Rohr, and three hours from paralegal Filley.


e. Summary

In sum, the court will allow the plaintiffs to recover fees on the following hours:

|        | Hours   | Reduction | Subtotal |
|--------|---------|-----------|----------|
| Caldas | 563.175 |           | 563.175  |
| Kung   | 806.650 |           | 806.650  |
| Rohr   | 707.200 | 15 %      | 601.120  |
| Schulz | 257.900 | 15 %      | 219.215  |

48

| Filley | 723.600 |      |   | 723.600   |
| Siemon | 200.200 | 50 % |   | 100.100   |
| TOTAL  |         |      |   | 3,013.860 |

### 3. Hourly Rates

The court will next address the hourly rates it will use in computing the lodestar figure.  The parties have two disagreements in this area.  First, they disagree on the statutory cap on hourly rates under the PLRA. Second, they disagree on what constitutes a reasonable rate, within the PLRA's limits, for several members of the plaintiffs' litigation team.  Again, the court has considered the Johnson factors in reaching a final determination on the hourly rates awarded.

### a. PLRA

Ordinarily, "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at

49

1299.  In prisoner litigation, however, the PLRA limits
the hourly rate to no "greater than 150 percent of the
hourly rate established under section 3006A of Title 18
for payment of court-appointed counsel."   42 U.S.C.
§ 1997e(d)(3).

The parties are in disagreement as to what the
"established" hourly rate under 18 U.S.C. § 3006A is.
According to the plaintiffs, the Judicial Conference
approved funding under that statute at a rate of $ 113
per hour, so the maximum hourly rate under the PLRA is
150 % of $ 113, or $ 169.50.  The defendants argue that
although the Judicial Conference has requested funding
from Congress at a rate of $ 113 per hour, congressional
appropriations permit funding in this district at a rate
of only $ 90 per hour.  Therefore, the defendants argue,
the maximum hourly rate under the PLRA is 150 % of $ 90,
or $ 135.

The Eleventh Circuit Court of Appeals has not
addressed this issue, and the circuits that have are

divided.[3]  The first appellate court to take a position
was the Third Circuit, which adopted the defendants'
approach and held that the PLRA limits attorney's fees to
the hourly rate as actually implemented under budgetary
constraints, not the rate set by the Judicial Conference.
Hernandez v. Kalinowski, 146 F.3d 196, 201 (3d Cir.
1998).  Subsequently, however, the Ninth Circuit held the
opposite: the PLRA limit is pegged to the Judicial
Conference's rate, not the rate actually paid to court-
appointed attorneys.  Webb v. Ada County, 285 F.3d 829,
838-39 (9th Cir. 2002).  More recently, the Sixth Circuit
joined the Ninth in holding that the Judicial
Conference's rate, not the rate actually paid, was the
maximum under the PLRA.  Hadix v. Johnson, 398 F.3d 863
(6th Cir. 2005).

The Hernandez and Webb courts provide only brief
explanations for their holdings, and this court finds

_____

3.  Some federal district courts in other circuits
have addressed this issue as well.   E.g., Skinner v.
Uphoff, 324 F.Supp.2d 1278, 1282 (D. Wyo. 2004) (Brimmer,
J.) (siding with the defendants' position).

those two decisions to be of little assistance in
determining which rate to adopt.    This court is
persuaded, however, by the detailed and cogent analysis
provided by the Sixth Circuit in Hadix.  The Hadix court
begins with the plain language of the PLRA, which caps
the hourly rate for attorney's fees at 150 % of the
hourly rate "established under section 3006A of Title 18
for payment of court-appointed counsel."    42 U.S.C.
§ 1997e(d)(3).  Then, the Hadix court turns to § 3006A to
find the hourly rate "established" under that statute.
According to that statute, "the Judicial Conference is
authorized to raise the maximum hourly rates specified in
this paragraph." 18 U.S.C. § 3006A(d)(1).  As the Hadix
court observes,

> "The statute contains no reference to
> congressional appropriations or to rates
> of compensation that are actually paid
> to court-appointed counsel.    While
> congressional appropriations may place
> a practical limitation on the amount
> actually paid to court-appointed
> counsel, there is no language in § 3006A
> that expressly limits the Judicial
> Conference's discretion to set rates

52

> based on budgetary constraints. If
> Congress had wanted attorney fees under
> the PLRA to be based on the amount of
> money budgeted for payment of court-
> appointed counsel, it could easily have
> used such language rather than cross-
> referencing § 3006A."

398 F.3d at 867.

This court agrees with <u>Hadix</u>'s interpretation of the PLRA and § 3006A. Where the PLRA refers to the hourly rate "established" by § 3006A, that section's unambiguous delegation of authority to the Judicial Conference to raise that rate, without any reservation by Congress of the obligation to approve it, means that the Judicial Conference's rate is controlling in PLRA cases.

This court also agrees with the <u>Hadix</u> court's additional observation that because attorney's fees under the PLRA are not paid with federal funds, Congress's budgetary appropriations for court-appointed attorneys under § 3006A do not express its policy determination that attorney's fees under the PLRA should be limited to the same extent as federal compensation for court-

appointed attorneys.   "There is no logical reason to limit fee awards in [prisoner] cases to the amount of money set aside to fund [§ 3006A]."   Id.

Accordingly, this court joins the Sixth and Ninth Circuits in holding that the maximum rate available to the plaintiffs pursuant to the PLRA is 150 % of the Judicial Conference's rate of $ 113, or $ 169.50 per hour.


### b. Reasonable Rates

The court must now ensure that the maximum PLRA rate satisfies the general requirement under the lodestar approach that the hourly rate not be unreasonably high. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."   Norman, 836 F.2d at 1299.   The relevant legal community is Montgomery, Alabama.   Hall v. Lowder Realty Co., 263 F.Supp.2d 1352, 1366 (M.D. Ala. 2003)

(Thompson, J.).  Here, the plaintiffs seek fees for the services of four attorneys and two paralegals.


### i. Attorneys

The court begins with attorneys Caldas, Kung, and Schulz.  Having reviewed the evidence submitted by plaintiffs in support of their application for attorney's fees, the court is satisfied that a reasonable hourly rate for these three attorneys exceeds $ 169.50. Therefore, pursuant to PLRA's statutory rate cap, the court approves an hourly rate of $ 169.50 for attorneys Caldas, Kung, and Schulz.

The hourly rate for attorney Rohr represents a slightly more difficult issue.  First, the defendants point out that Rohr sought fees at an attorney's rate for work she did on this case before being admitted to the bar on November 12, 2003.  Plaintiffs acknowledge this oversight and propose that Rohr's hours prior to being admitted to the bar be billed at a paralegal rate.  The

court agrees that this is a workable solution and will consider her hourly paralegal rate below.

Second, the plaintiffs have not demonstrated that an attorney with Rohr's skills, experience, and reputation would command a rate of $ 169.50 in Montgomery, Alabama. According to the plaintiffs, their law firm's billing rate in Atlanta, Georgia for first-year lawyers such as Rohr is $ 170 per hour. The plaintiffs also submitted an affidavit by H. Thomas Wells, Jr., an Alabama lawyer who states that first-year associates at his firm, whether they practice in Montgomery or Birmingham, bill at a rate of $ 160 per hour. It is reasonable to conclude that billing rates for first-year associates are slightly less in Montgomery than in Atlanta. Therefore, instead of approving the maximum rate allowed under the PLRA for attorney Rohr, the court will allow the plaintiffs to bill $ 160 per hour for the services she performed after she was admitted to the bar.

## ii. Paralegals

The court next addresses the billing rate for paralegals. Paralegal work may be separately billed for fee awards under § 1988. <u>Missouri v. Jenkins</u>, 491 U.S. 274, 288 (1989). The plaintiffs seek paralegal fees at a rate of $ 120 per hour for paralegal Filley, $ 110 per hour for paralegal Siemon, and $ 100 per hour for Rohr's work on this case before she was admitted to the bar. According to the Wells affidavit, his firm bills paralegal services at a rate of $ 90 to $ 125 per hour.

The defendants object to the plaintiffs' paralegal rates on two grounds. First, they argue that these rates are too high because the standard billing rate for paralegals in Montgomery is no more than $ 80 per hour. In support of this argument they submit an affidavit by attorney Ellen Leonard, who states that an informal survey of four Montgomery law firms reveals that the standard billing rate for paralegals is $ 60 to $ 80 per hour. In addition, this court has previously stated that

$ 75 per hour is "the rate commonly awarded paralegals by this court." Hall, 263 F.Supp.2d at 1369. Second, the defendants argue that although the PLRA is silent on the issue of billing rates for paralegals, the court should reduce their hourly rate consistent with Congress's intent to limit fee-shifting in prisoner cases and to avoid a scenario in which prevailing plaintiffs recover paralegal fees at a rate almost as high as the rate for attorney's fees. See Ilick v. Miller, 68 F.Supp.2d 1169, 1179 (D. Nev. 1999) (Hagen, J.).

The court does not interpret the PLRA to provide a cap on paralegal rates different from the cap on attorney rates. Prevailing parties generally may recover paralegal fees along with attorney's fees, and the PLRA is absolutely silent on the issue of paralegal support. Regarding hourly rates, the PLRA states: "No award of attorney's fees ... shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of

58

court-appointed counsel."   42 U.S.C. § 1997e(d)(3). Therefore, this court reads the PLRA to prohibit paralegal rates in excess of $ 169.50 but to permit whatever lesser rate would be considered reasonable under 42 U.S.C. § 1988(b).

Although the court does not read the PLRA to compel a reduction in the plaintiffs' paralegal rates, it does think their proposed paralegal rates are too high. Instead, the court will allow $ 75 per hour for Siemon and $ 85 per hour for Filley and Rohr.   The court has determined that these rates are reasonable after considering affidavits from the parties and this court's previous practices.   The court awards Filley a rate slightly higher than its normal paralegal rate of $ 75 based on the sworn statement by attorney Stephen Bright that Filley was "[a]rguably the most important member of Plaintiffs' legal team," and Rohr is awarded a slightly higher rate because of her superior credentials during

the period of time she was not yet licensed to practice law.

### c. Summary

In sum, the court will allow plaintiffs to recover fees at the following rates:

| Name | Rate |
|------|------|
| Attorney Caldas | $ 169.50 / hr. |
| Attorney Kung | $ 169.50 / hr. |
| Attorney Schulz | $ 169.50 / hr. |
| Attorney Rohr | $ 160.00 / hr. |
| Paralegal Filley | $ 85.00 / hr. |
| Paralegal Siemon | $ 75.00 / hr. |
| Paralegal Rohr | $ 85.00 / hr. |

### 4. Adjustments to the Lodestar

The parties do not suggest any upward or downward adjustments to the lodestar, and this court does not think any adjustments are warranted.

60

### 5. Expenses

The plaintiffs claim compensable litigation expenses in the amount of $ 62,892.50.  The defendants agree to pay expenses but have challenged certain expenses as unnecessary or non-compensable.  The court proceeds to address the defendants' objections.

First, the defendants argue that they should pay only some of the expenses associated with the plaintiffs' first motion for preliminary injunction because the court granted preliminary injunctive relief only in part.  For the reasons previously stated in this court's discussion of the number of hours claimed, <u>supra</u> Subsection III.A.2.a.i, the court agrees with the defendants that these expenses should be reduced.  The court subtracts $ 3,932.11.

Next, the defendants argue that they should not have to pay any expenses associated with the plaintiffs' objections to the defendants' second remedial plan, which the court neither approved nor disapproved.  For the

reasons previously stated in this court's discussion of the number of hours claimed, <u>supra</u> Subsection III.A.2.a.iii(a), the court agrees with the defendants that these expenses are non-compensable.  The court subtracts $ 390.00.

Next, the court challenges expenses associated with the plaintiffs' second motion for preliminary injunction. The plaintiffs acknowledge that they mistakenly included some of those expenses in their fee request.  However, there remains a $ 160.00 discrepancy between the expenses the plaintiffs agreed to deduct and the expenses challenged by the defendants.  The court views this as a probable oversight by the plaintiffs and subtracts $ 160.00.

Next, the defendants challenge expenses associated with the plaintiffs' motion to compel on which they did not prevail.  For the reasons previously stated in this court's discussion of the number of hours claimed, <u>supra</u> Subsection III.A.2.a.iii(b), the court agrees with the

defendants that these expenses are non-compensable.  The
court subtracts $ 140.00.

Next, the defendants challenge all expenses
associated with litigation against the non-state
defendants.  In accordance with the principles previously
articulated in this court's discussion of the number of
hours claims, supra Subsection III.A.2.a.iii(c), the
court concludes that the attorneys' travel expenses
associated with the plaintiffs' medical and mental-health
claims are compensable, but that other litigation
expenses associated with the litigation against the non-
state defendants are not.  The court subtracts
$ 1,326.00.

Next, the defendants argue that they should not have
to pay expenses related to experts who did not testify.
For the reasons previously stated in this court's
discussion of the number of hours claimed, supra
Subsection III.A.2.a.iii(d), the court finds that the
attorneys' travel expenses associated with consulting

with experts are compensable.  However, fees for the experts themselves are <u>not</u> recoverable in cases brought under 42 U.S.C. § 1983.  <u>Webster Greenthumb</u>, 112 F.Supp.2d at 1380 ("Since the Supreme Court's 1991 decision in [<u>West Virginia University Hospital v. Casey</u>, 499 U.S. 83, 102 (1991)] and the amendment to Section 1988 explicitly allowing expert fees in only Section 1981 and 1981a cases, federal courts consistently have held that prevailing parties in Section 1983 cases cannot recover expert witness fees.").  The court also finds that the plaintiffs' descriptions of certain other expenses related to the experts are too vague to be compensable, regardless of the statutory rules on expert fees.  The court subtracts $ 1,752.52.

Next, the defendants object to the amount of expenses claimed on grounds that the plaintiffs overstaffed the case.  For the reasons previously stated in this court's discussion of the number of hours claims, <u>supra</u> Subsection III.A.2.c, the court rejects the defendants'

**64**

overstaffing argument and therefore finds that the reasonable expenses of all the attorneys who worked on this case are compensable.  However, the court also finds that attorney Schulz's travel expenses and attorney Rohr's hotel bills are excessive and should be reduced. The court subtracts $ 3,364.68.

Next, the defendants challenge certain other expenses either as unnecessary or as lacking enough description to be compensable without additional information.  The court has reviewed these entries and agrees with some of the defendants' objections.  The court subtracts $ 331.17.

In total, the court subtracts $ 11,396.48, which means that the plaintiffs shall recover $ 51,496.02 in expenses.

## 6. Summary

The court having determined that the plaintiffs are prevailing parties, having calculated the lodestar, and having determined that no adjustments to the lodestar are

65

warranted, the final award under the plaintiffs' first motion for attorney's fees is as follows:

|  | Hours | Rate | Subtotal |
|---|---|---|---|
| Attorney Caldas | 563.175 | $ 169.50 / hr | $ 95,458.16 |
| Attorney Kung | 806.650 | $ 169.50 / hr | $ 136,727.18 |
| Attorney Rohr | 412.250 | $ 160.00 / hr | $ 65,960.00 |
| Attorney Schulz | 219.215 | $ 169.50 / hr | $ 37,156.94 |
| Paralegal Filley | 723.600 | $ 85.00 / hr | $ 61,506.00 |
| Paralegal Siemon | 100.100 | $ 75.00 / hr | $ 7507.50 |
| Paralegal Rohr | 188.870 | $ 85.00 / hr | $ 16,053.95 |
| TOTAL HOURS | 3,013.860 |  | $ 420,369.73 |
| Expenses |  |  | $ 51,496.02 |
| TOTAL FEES |  |  | $ 471,865.75 |

### 7. Interest

The plaintiffs request interest on the attorney's fees and expenses awarded with their first motion. They are correct that they are entitled to interest on this

66

award.  Gates v. Coller, 616 F.2d 1268, 1272-79 (5th Cir.

1980), modified on reh'g, 636 F.2d 942 (5th Cir. 1981).

They are also correct that the interest runs from the

date of the judgment establishing their entitlement to

the award, which in this case was August 23, 2004.  Id.

at 1270 n.2. & 1279; Georgia Ass'n of Retarded Citizens

v. McDaniel, 855 F.2d 794, 799 (11th Cir. 1988); see also

Jenkins v. Missouri, 931 F.2d 1273 (8th Cir. 1991);

Copper Liquor, Inc. v. Adolph Coors Co., 701 F.2d 542

(5th Cir. 1983); but see Fleming v. County of Kane, 898

F.2d 553, 565 (7th Cir. 1990).  The $ 474,698.80 award on

the plaintiffs' first motion is exclusive of interest,

and the defendants must therefore calculate the interest

to be added to that amount when they deliver payment to

the plaintiffs.  The proper calculation of interest is

governed by 28 U.S.C. § 1961.

## B. Second Motion for Attorney's Fees

In the plaintiffs' second motion, they seek attorney's fees and costs incurred in litigating the fees issue and monitoring and enforcing the consent decrees during the two-year period following the entry of final judgment. Their current fee request can be broken down as follows:

|  | Hours | Rate | Subtotal |
|---|---|---|---|
| Attorney Felder | 60.9 | $ 169.50 / hr | $ 10,332.55 |
| Attorney Hanlon | 133.9 | $ 169.50 / hr | $ 22,696.05 |
| Attorney Kung | 161.3 | $ 169.50 / hr | $ 27,340.35 |
| Attorney Rohr | 716.2 | $ 169.50 / hr | $ 121,395.90 |
| Attorney Schulz | 124.5 | $ 169.50 / hr | $ 21,102.75 |
| Paralegal Doctoroff | 272.4 | $ 120.00 / hr | $ 32,688.00 |
| Paralegal Patterson | 10.7 | $ 120.00 / hr | $ 1,284.00 |
| Paralegal Shareiko | 15.5 | $ 45.00 / hr | $ 697.50 |
| Paralegal Siemon | 26.5 | $ 120.00 / hr | $ 3,180.00 |

| Paralegal Smith | 1.8 | $ 70.00 / hr | $ 126.00 |
|---|---|---|---|
| TOTAL HOURS | 1,523.7 | | $ 240,843.10 |
| Expenses | | | $ 16,063.08 |
| TOTAL FEES | | | $ 256,906.18 |

The plaintiffs' second motion essentially presents the court with three general areas of inquiry: first, attorney's fees for time spent litigating attorney's fees (also known as 'fees on fees'); second, attorney's fees for monitoring compliance with the consent decrees; and third, attorney's fees for enforcing the consent decrees.

### 1. Fees on Fees

The PLRA does not change the rule that an entitlement to attorney's fees under 42 U.S.C. § 1988 includes an entitlement to fees on fees. <u>Jackson v. State Bd. of Pardons & Paroles</u>, 331 F.3d 790, 798-99 (11th Cir. 2003); <u>accord</u> <u>Volk v. Gonzalez</u>, 262 F.3d 528, 536 (5th Cir. 2001); <u>Hernandez v. Kalinowski</u>, 146 F.3d 196, 200-01 (3d

69

Cir. 1998).  Indeed, the defendants agree that the plaintiffs are entitled to reasonable fees for litigating the issue of attorney's fees.

The defendants do not agree, however, with the plaintiffs' application for all the fees they incurred litigating the fees issue.  They argue instead that a reasonable fees-on-fees award should be determined based on the extent to which the plaintiffs prevail in their first motion for attorney's fees.  Although the defendants have requested an opportunity to provide the court with further briefing once the first motion for attorney's fees has been resolved, under the circumstances the court thinks it better simply to resolve the fees-on-fees issue at this time.  "Putting an end to attorney fees issues as soon as possible is, to borrow a phrase from Holmes, a 'concession to the shortness of life.'"  Barnes, 168 F.3d at 432 (quoting Reeve v. Dennett, 11 N.E. 938, 944 (Mass. 1887) (Holmes, J.)).

As the defendants imply, the plaintiffs' recovery of fees-on-fees should be "proportionately related to the court ordered relief" on their first motion for attorney's fees.  42 U.S.C. § 1997e(d)(1)(B)(i).  The court will endeavor to make this relatively simple.  The plaintiffs initially requested a total fee award of $ 722,063.65, before making some adjustments to their request based on the objections of the defendants. Today, this court is granting the plaintiff's first motion for attorney's fees to the extent that they may recover $ 471,865.75, which is 65.35 % of $ 722,063.65. A proportional fees-on-fees award, therefore, is 65.35 % of the fees the plaintiffs incurred in obtaining their fee award on the first motion.

The court has reviewed the plaintiffs' billing statements and finds that the following hours are properly attributable to fees-on-fees recovery: 60.9 hours for attorney Felder, 108.3 hours for attorney Hanlon, 17.8 hours for attorney Kung, 107.6 hours for

attorney Rohr, and 62.7 hours for attorney Schulz. Before applying the across-the-board proportionality cut, the court must also consider the defendants' line-by-line objections to the plaintiffs' fees-on-fees billing entries. The court agrees with the defendants that some of these challenged hours are not compensable but finds that the majority of them are properly billed. The court subtracts 9.1 hours from attorney Rohr, 0.8 hours from attorney Schulz, and three hours from attorney Felder. Now, applying an across-the-board proportionality cut, the court finds that the plaintiffs should recover fees-on-fees for the following number of hours: 37.84 hours for attorney Felder, 70.77 hours for attorney Hanlon, 11.63 hours for attorney Kung, 64.37 hours for attorney Rohr, and 40.45 hours for attorney Schulz. The total number of fees-on-fees hours, then, is 225.06.

The court has reviewed the affidavits and exhibits submitted by the plaintiffs and is satisfied that a reasonable hourly rate for all five of the above-listed

attorneys exceeds the PLRA statutory cap of $ 169.50 per hour.  Therefore, the lodestar amount for fees on fees is $ 169.50 multiplied by 225.06, or $ 38,147.67.  The court finds that no adjustments to the lodestar amount are appropriate and that $ 38,147.67 represents the final fees-on-fees award.

### 2. Post-Judgment Monitoring Fees

The next question is whether post-judgment monitoring fees are recoverable.  The plaintiffs' attorneys unquestionably spent a great deal of time and money monitoring the defendants' compliance with the consent decrees.  But the defendants argue that the consent decrees do not provide for post-judgment monitoring fees and that the plaintiffs are not otherwise entitled to such fees as a result of the PLRA's provisions for fee awards under 42 U.S.C. § 1988.

### a. Consent Decrees

The court begins by reviewing the consent decrees themselves to determine whether the parties, in reaching a settlement, either agreed to the post-judgment monitoring fees the plaintiffs now seek or agreed that such fees would not be recovered. Once a consent decree is approved, its terms are interpreted according to principles of contract law. Reynolds v. Roberts, 202 F.3d 1303, 1312-13 (11th Cir. 2000).

A review of the two agreements indicates that they are completely silent on the question of whether the defendants are to pay the plaintiffs post-judgment monitoring fees. The conditions agreement expressly permits the plaintiffs' attorneys to monitor compliance with that agreement but is silent as to whether they will be compensated by the defendants for their monitoring activities. Laube IV, 333 F.Supp.2d at 1251. The medical agreement expressly assigns to a neutral monitor the task of monitoring compliance with that agreement,

**74**

requires the defendants to pay the monitor's fees and
expenses, and requires the monitor to provide copies of
his or her reports to the parties, id. at 1263-64; but
the agreement is silent as to whether the healthcare
monitor's role is exclusive (that is, whether plaintiffs'
attorneys may engage in monitoring as well) and whether
the plaintiffs' attorneys can recover fees from the
defendants for reviewing the monitor's reports or for
their own activity monitoring compliance with the medical
agreement.

It is theoretically possible that canons of
construction could be employed in an effort to discern
the parties' intent regarding post-judgment monitoring
fees. Several plausible arguments emerge. For instance,
one could argue that because the medical agreement
expressly requires the defendants to pay the fees and
expenses of the neutral healthcare monitor, the
conditions agreement's silence as to the fees and costs
of the plaintiffs' counsel's monitoring activities

implies that the plaintiffs must bear their own monitoring costs. On the other hand, one could also argue that because the conditions agreement expressly states that the plaintiffs shall bear the costs of any experts it brings to the facilities for monitoring, its silence regarding the fees and expenses of the attorneys and paralegals themselves implies that those fees and expenses are to be borne by the defendants. <u>See</u> <u>Cody v. Hillard</u>, 304 F.3d 767, 778 (8th Cir. 2002) (interpreting attorney-fee silence in prison-conditions consent decree); <u>cf</u>. <u>Ex parte Haponski</u>, 395 So.2d 971, 972 (Ala. 1981) (familiar canon of statutory construction <u>expressio unius est exclusio alterius</u> is equally applicable in construction of contract language).

To be candid, however, those interpretations strike the court as implausible under the circumstances. The more reasonable conclusion to draw from the agreements' silence regarding the post-judgment monitoring fees is that the parties reached no agreement one way or the

other as to whether post-judgment monitoring would be compensable. When a settlement agreement is silent on the issue of attorney's fees, such silence is not normally considered a waiver of such fees. 5 Alba Conte & Herbert W. Newberg, Newberg on Class Actions § 15:35 (4th ed. 2002); Taylor Group, Inc. v. Johnson, 919 F.Supp. 1545, 1548-51 (M.D. Ala. 1996) (DeMent, J.). The court concludes that the consent decrees' silence on post-judgment monitoring fees should be read as just that: silence. The consent decrees, in and of themselves, neither require nor preclude attorney's fees for monitoring.


### b. Section 1988 and the PLRA

Because the consent decrees are silent as to post-judgment monitoring fees and such silence is not interpreted as a waiver, the court must now determine whether § 1988 as modified by the PLRA allows attorney's fees awards for post-judgment monitoring. Reasonable

77

post-judgment monitoring fees are recoverable under 42 U.S.C. § 1988 in cases not covered by the PLRA. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 559 (1986); Mills v. Freeman, 118 F.3d 727, 734 (11th Cir. 1997); Norman, 836 F.2d at 1305; but see Alliance to End Repression v. City of Chicago, 356 F.3d 767, 771, 772 (7th Cir. 2004) (casting doubt on availability of monitoring fees after the Supreme Court's decision in Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources, 532 U.S. 598 (2001)).   The PLRA, however, states:

> "In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that--
>
> > (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be

> awarded under section 1988 of this title; and
>
> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
> (ii) the fee was directly and reasonably incurred in <u>enforcing</u> the relief ordered for the violation."

42 U.S.C. § 1997e(d)(1) (emphasis added).

Earlier in this opinion, the court interpreted subsection (d)(1)(A) of the statute to allow for attorney's fees directly and reasonably incurred in securing a consent decree that met the strict requirements of the PLRA under 18 U.S.C. § 3626, and the defendants' response to the plaintiffs' first motion for attorney's fees is generally consistent with that interpretation. Now the question presented is whether the statute can be interpreted to allow for attorney's fees incurred by the prevailing party in monitoring compliance with a consent decree <u>after</u> a final judgment incorporating its terms is entered.

Several courts have taken note of the peculiar "and" connecting subsections (d)(1)(A) and (d)(1)(B).  <u>Cody</u>, 304 F.3d at 776; <u>Webb</u>, 285 F.3d at 834.  "Read in isolation, subsection (A) might be thought to forbid any fees for legal work done to enforce previously established relief.  One would not ordinarily say that a lawyer performing such work is 'proving' a violation." <u>Cody</u>, 304 F.3d at 776.  But surely it cannot be the case that enforcement work is non-compensable unless it simultaneously proves the violation that led to the court-ordered relief being enforced.

This court makes sense of the statutory language as follows.  The statute states that it applies to "any <u>action</u> brought by a prisoner," 42 U.S.C. § 1997e(d)(1) (emphasis added), not 'any motion' or 'any fee request.' This court therefore reads the term "the fee" in subsections (d)(1)(A) and (d)(1)(B)(ii) to describe <u>all</u> attorney's fees awarded over the lifetime of a single case.  That way, it is possible for the 'same' fee, writ large, to be incurred both in proving an actual violation

80

<u>and</u> in enforcing the court-ordered relief.  Consequently,
where a prisoner seeks attorney's fees for post-judgment
enforcement work, such fees can be awarded if the
prisoner is also (or was previously) awarded fees for
pre-judgment work in the same case.  The court thinks
this reading of the PLRA gives meaning to all the words
in the statute and gives effect to Congress's probable
intent that prisoners recover fees incurred in enforcing
court-ordered relief when they have also recovered fees
"incurred in proving an actual violation of the
plaintiff's rights."  <u>Id</u>.

In this case, the plaintiffs meet the threshold
requirement of having been awarded fees directly and
reasonably incurred in proving a violation.  Therefore,
they are also entitled to fees directly and reasonably
incurred in enforcing the court-ordered relief.[4]

_____

4.  The court need not decide in this case whether
the converse is also true: that prisoners who are not
awarded attorney's fees for pre-judgment work can never
obtain fees for post-judgment enforcement.

Unfortunately for the plaintiffs, 42 U.S.C. § 1997e(d)(1)(B)(ii) does not say 'directly and reasonably incurred in monitoring compliance with the court-ordered relief,' or even 'directly and reasonably incurred in realizing the benefits of the court-ordered relief.' Rather, it says "directly and reasonably incurred in <u>enforcing</u> the relief." Parties enforce relief when they ask the court to adjudicate non-compliance with its judgment, not when they monitor compliance without the court's involvement. <u>Cf</u>. <u>Roland v. Celluci</u>, 151 F.Supp.2d 145, 153-54 (D. Mass. 2003) (Neiman, M.J.) (distinguishing between monitoring and enforcement). The plaintiffs in this case argue that "[e]nforcement necessarily includes monitoring." Pl. Br. (doc. no. 408) at 4. But this is true only in the sense that most enforcement is preceded by monitoring; not all monitoring, however, is followed by enforcement. And while extensive monitoring can put pressure on a defendant to comply with court-ordered relief, thereby

obtaining the benefits of such compliance without further resort to litigation, the costs of such monitoring are not directly and reasonably incurred in <u>enforcing</u> the relief ordered when no related enforcement litigation ever takes place.

Surprisingly, the court finds little discussion of this issue in the published case law.  In one treatise on § 1983 litigation, the authors state that the implication of the PLRA is that "only services calculated to <u>enforce</u>, by noncompliance or contempt motion, for example, the judgment and <u>not merely to monitor the defendants' compliance with it</u>, may be compensable under § 1988."  2 Martin A. Schwartz & John E. Kirklin, <u>Section 1983 Litigation</u> § 2.7, at 39 (3d ed. 1997) (second emphasis added).  The Eighth Circuit, in <u>dicta</u>, agrees with the Schwartz & Kirklin interpretation.  <u>Cody</u>, 304 F.3d at 777.[5]

---

5.  The <u>Cody</u> court notes that other litigation procedures, such as defending a consent decree against a motion to vacate, could be considered "enforcement" (continued...)

The court acknowledges one recent district court decision outside this circuit, Ginest v. Board of County Commissioners, 423 F.Supp.2d 1237, 1240-41 (D. Wyo. 2006) (Johnson, J.), which holds that the PLRA does not preclude an award of attorney's fees for post-judgment monitoring. In Ginest, however, the court relies exclusively on precedent that does not support its position in any way. First, the Ginest court cites Cody, 304 F.3d 767. But Cody awarded post-judgment monitoring fees because the monitoring took place before the PLRA was enacted; and, as stated, Cody dicta actually rejects post-judgment monitoring fees in PLRA cases. 304 F.3d at 777. Next, Ginest cites Webb, 285 F.3d 829. But in Webb, the plaintiffs were awarded fees for post-judgment litigation--that is to say, enforcement--not monitoring. The Ginest court also cites Plyler v. Evatt, 902 F.2d 273 (4th Cir. 1990) and MacLaird v. Werger, 723 F.Supp. 617

_____

    5.   (...continued)
actions entitled to attorney's fees under § 1988 as modified by the PLRA.  Cody, 304 F.3d at 777.

(D. Wyo. 1989).  Both these cases that were decided before the PLRA was enacted; § 1988 allows post-judgment monitoring fees, so pre-PLRA case law on this issue is relatively unhelpful.  Furthermore, Plyler, unlike this case, involved a consent decree that expressly provided for attorney's fees for post-judgment monitoring.  902 F.2d at 276.  And in MacLaird the plaintiffs sought attorney's fees for filing a contempt motion, 723 F.Supp. at 617-18, which, as in Webb, places that case more in the realm of 'enforcement' than 'monitoring.'  In sum, the court is unconvinced by Ginest's interpretation of the PLRA and related case law on this issue.

The court is sympathetic to the plaintiffs' position because intensive monitoring is an important and often vital component of ensuring compliance with court-ordered prospective relief.  However, fee-shifting is a creature of statute, and "[w]hat Congress giveth ... it can also taketh away."  Burks v. American River Transp. Co., 679 F.2d 69, 76 (5th Cir. 1982).  Although the court

encourages plaintiffs, especially in class action cases, to monitor compliance with court-ordered injunctive relief, it cannot conclude that such monitoring, by itself and without any related post-judgment litigation, constitutes "enforcing" the court-ordered relief.

Nevertheless, because the PLRA allows the court to award fees directly and reasonably incurred in enforcing court-ordered relief, monitoring fees are recoverable when they directly and reasonably lead to enforcement activity. That is, the court reads the PLRA to disallow awards of post-judgment monitoring fees not directly and reasonably incurred in enforcing the judgment through litigation; but if the court finds that some of the plaintiffs' enforcement activities are compensable, then the plaintiffs' monitoring activities directly and reasonably related to those enforcement activities will be compensable as well.

Because the court concludes that post-judgment monitoring is compensable only when it directly and

86

reasonably leads to enforcing the judgment, the compensability of the hours the plaintiffs classified as "monitoring" depends on whether the plaintiffs incurred any compensable fees in enforcing the consent decrees. In the following subsection of this opinion, the court turns to post-judgment enforcement fees. If the court finds that the plaintiffs directly and reasonably incurred fees in enforcing the judgment, the court will also award monitoring fees directly and reasonably incurred as part of the plaintiffs' enforcement activity.

### 3. Post-Judgment Enforcement Fees

The last question is whether post-judgment enforcement fees are compensable. As stated, there is a difference between monitoring and enforcement: monitoring entails observing and verifying defendants' compliance with an injunction, whereas enforcement consists of plaintiffs' efforts, via post-judgment litigation, to adjudicate a claim that the defendants are not complying

with the court's judgment.  In this case, the plaintiffs

filed a post-judgment contempt motion (alleging that the

defendants failed to comply with the medical agreement)

that was eventually settled out of court.  Similarly to

their argument against post-judgment monitoring fees, the

defendants argue that they should not have to pay

attorney's fees for the plaintiffs' enforcement efforts

because the consent decrees do not provide for

enforcement fees and because such fees would be available

under 42 U.S.C. § 1988 only if the plaintiffs were to

prevail on a motion to hold the defendants in contempt.


### a. Consent Decree

Once again, the court begins by reviewing the medical

consent decree itself to determine whether the parties

reached an agreement regarding post-judgment enforcement.

The medical agreement does contain a provision regarding

enforcement:

> "If the [Alabama Department of
> Corrections,] its agents or contractors,

> fail to comply with the terms and
> conditions of this Medical Settlement
> Agreement, Plaintiffs' counsel may apply
> to the Court for a finding of contempt
> or other appropriate relief.  Prior to
> approaching the Court for such relief,
> Plaintiffs' counsel will bring, in
> writing, any deficiencies to the
> attention of the Defendants and the
> Healthcare Monitor or Mental Health
> Auditor, as appropriate, and will make
> reasonable attempts to resolve the
> issues informally.  Issues that cannot
> be resolved informally between the
> parties shall be brought to the
> attention of the Magistrate Judge, who
> will attempt to mediate a resolution,
> before Plaintiffs' counsel will move the
> Court for an Order for Defendants to
> show cause why they should not be held
> in contempt."

Laube IV, 333 F.Supp.2d at 1264.  The agreement thus
defines the contours of enforcement actions and spells
out the preconditions to obtaining additional court-
ordered relief.

As with the monitoring provisions, however, the
consent decree is silent as to the issue of attorney's
fees for enforcement.  As before, the court will not
interpret such silence as a waiver of fees.  Rather, the

court concludes that the consent decree neither requires nor prohibits attorney's fees for enforcement.

### b. Section 1988 and the PLRA

Because the medical consent decree is silent as to post-judgment enforcement fees and such silence is not interpreted as a waiver, the court must now determine whether 42 U.S.C. § 1988 as modified by the PLRA allows fee awards for post-judgment enforcement.  There is nothing in the PLRA itself that prohibits, as a general matter, attorney's fees for enforcement.  Indeed, the statute specifically envisions fees "directly and reasonably incurred in enforcing the relief ordered for the violation." 42 U.S.C. § 1997e(d)(1)(B)(ii).  Rather, the court must address a question that applies to all § 1988 cases: whether enforcement fees are recoverable when a contempt motion or other enforcement action does not lead to additional court-ordered relief.

In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001), the Supreme Court held that a plaintiff seeking attorney's fees under a fee-shifting statute such as 42 U.S.C. § 1988 is a "prevailing party" entitled to fees only if she has achieved a sought-after "judicially sanctioned change in the legal relationship of the parties." 532 U.S. at 600.[6]  A judgment on the merits, a court-ordered consent decree, or a settlement agreement the court explicitly retains jurisdiction to enforce all qualify as judicial imprimaturs on the change in the legal relationship between the parties.  *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904-05 (11th Cir. 2003); *American Disability Ass'n v. Chmielarz*, 289 F.3d 1315,

_____

6.  Although in *Buckhannon* the plaintiffs sought attorney's fees under the fee-shifting provisions of 42 U.S.C. §§ 3613 and 12205, the holding of *Buckhannon* applies to § 1988 as well.  532 U.S. at 602-03 & n.4 ("We have interpreted these fee-shifting provisions consistently and so approach the nearly identical provisions at issue here." (citation omitted)); *Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904-05 (11th Cir. 2003); *Dillard v. Colbert County Comm'n*, 494 F.Supp.2d 1297, 1300 n.2 (M.D. Ala. 2007) (Thompson, J.).

1320 (11th Cir. 2002).  A completely private settlement agreement, however, is not enough.  Buckhannon, 532 U.S. at 604 n.7; see also T.D. v. LaGrange Sch. Dist. No. 102, 349 F.3d 469, 478-79 (7th Cir. 2003); Christina A. v. Bloomberg, 315 F.3d 990, 993 (8th Cir. 2003); Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy, 288 F.3d 452, 458-59 (D.C. Cir. 2002); Smyth v. Rivero, 282 F.3d 268, 281 n.10 (4th Cir. 2002).  Therefore, if a civil-rights plaintiff brings suit and reaches a settlement agreement with the defendant, the plaintiff cannot later petition the court for an award of attorney's fees unless the terms of the settlement agreement are incorporated into a court order or the court explicitly retains jurisdiction to enforce the agreement.

As previously discussed, the plaintiffs meet the "prevailing party" requirement for purposes of their first motion for attorney's fees because they obtained judicially sanctioned relief in the form of the two settlement agreements approved and adopted by this court

92

in 2004.   The question now is whether they must again meet the "prevailing party" requirement in order to qualify for attorney's fees on their contempt motion. That is, when a civil-rights plaintiff has already achieved prevailing-party status on account of a consent decree but then pursues post-judgment enforcement of that decree, must there be another judicially sanctioned change in the legal relationship between the parties in order for the plaintiff to recover attorney's fees on the enforcement action?   Or, if the parties resolve a contempt motion through a private settlement agreement the court does not incorporate into an order or retain jurisdiction to enforce, may the plaintiff seek such fees notwithstanding <u>Buckhannon</u>?

The Eleventh Circuit has yet to address the question of whether the <u>Buckhannon</u> principle should be extended to post-judgment enforcement actions.   Prior to <u>Buckhannon</u>, circuit law unquestionably allowed prevailing parties to obtain post-judgment enforcement fees even when the

enforcement activity did not yield additional court-ordered relief.  Miller v. Carson, 628 F.2d 346, 348-49 (5th Cir. 1980).   In this circuit, an intervening decision of the Supreme Court can overrule the decision of a prior appellate panel only if clearly on point. Garrett v. University of Alabama, 344 F.3d 1288, 1292 (11th Cir. 2003).  When binding circuit law closely on point "has been only weakened, rather than directly overruled, by the Supreme Court," neither a district court nor an appellate panel may disregard it.  Florida League of Professional Lobbyists, Inc. v. Meggs, 87 F.3d 457, 462 (11th Cir. 1996).  This court concludes that Buckhannon did not overrule, nor is it clearly contrary to, Miller v. Carson; at most, Buckhannon weakened Miller.  Therefore, the court concludes, consistent with both Miller and Buckhannon, that although a prevailing plaintiff's post-judgment enforcement efforts do not automatically entitle the plaintiff to recover fees, it is not a statutory requirement that those enforcement

94

efforts result in <u>another</u> judicially sanctioned change in the legal relationship between the partes.[7]

Furthermore, even if the <u>Buckhannon</u> principle could be viewed to apply to post-judgment enforcement situations under § 1988 generally, the language of the PLRA strongly suggests that it does not apply to prisoner cases in particular. Recall that this court previously noted the PLRA's use of the present participle in allowing fees "directly and reasonably incurred in

---

7.   On this particular question, authorities outside the Eleventh Circuit are split. In <u>Alliance to End Repression v. City of Chicago</u>, 356 F.3d 767 (7th Cir. 2004), the Seventh Circuit held that plaintiffs were not entitled to attorney's fees for completely unsuccessful post-decree contempt motions. <u>See also</u> <u>Rolland v. Cellucci</u>, 151 F.Supp.2d 145, 154-55 (D. Mass. 2001) (Neiman, M.J.) (post-judgment enforcement efforts compensable only if successful). However, in <u>Cody v. Hillard</u>, 304 F.3d 767 (8th Cir. 2002), the Eighth Circuit held that once the plaintiffs become prevailing parties in securing the underlying court-ordered relief, whether they are successful in post-judgment enforcement actions is only one factor to consider in determining whether they are entitled to attorney's fees. 304 F.3d at 773-75. <u>See also</u> <u>Johnson v. City of Tulsa</u>, 489 F.3d 1089, 1108 (10th Cir. 2007) (rejecting <u>Alliance</u>); <u>Blackman v. District of Columbia</u>, 328 F.Supp.2d 36, 43-44 (D.D.C. 2004) (Friedman, J.) (following <u>Cody</u>).

proving an actual violation of the plaintiff's rights,"
42 U.S.C. § 1997e(d)(1)(A) (emphasis added), interpreting
that language to cover fees incurred in the process of
proving an actual rights violation even if the merits of
the case are not adjudicated.  In addressing attorney's
fees for post-judgment enforcement litigation, the PLRA
employs parallel language: to be recoverable, such fees
must be "directly and reasonably incurred in enforcing
the relief ordered for the violation."    Id.
§ 1997e(d)(1)(B)(ii).  Again, by using the present
participle, Congress left room for prevailing plaintiffs
to recover attorney's fees for work recognized to be part
of the process of enforcing the relief even if that
process ends in a settlement rather than a court order of
contempt.    If  Congress  had  wanted  to  eliminate
enforcement fees except to the extent the court itself
enforced its judgment, it could have easily required that
such fees be directly and reasonably incurred in having

**96**

obtained enforcement of, rather than enforcing, the
relief ordered for the violation.

Accordingly, just as the PLRA's "incurred in proving"
language does not require the plaintiff to obtain a
judgment of liability, its "incurred in enforcing"
language does not require the plaintiff who seeks to
enforce court-ordered relief to obtain an order of
contempt. Rather, so long as prevailing plaintiffs go to
court and seek enforcement, § 1988 and the PLRA leave
enforcement-fee awards to the sound discretion of the
district court. The Eighth Circuit has suggested some
factors the court should take into account in determining
whether enforcement fees should be awarded and in what
amount: "the degree of a plaintiff's success in the case
as a whole"; whether the enforcement issues were
"'inextricably intertwined with those on which the
plaintiff prevailed in the underlying suit'"; and whether
the post-judgment litigation was "reasonable in degree."
Cody, 304 F.3d at 773 (quoting Jenkins v. Missouri, 127

F.3d 709, 717 (8th Cir. 1997)).  This court agrees that those factors are important and adds that, to the extent the 12 <u>Johnson</u> factors are not subsumed in those categories, they will also be considered.

### c. Compensable Enforcement Activity

Here, the focus of the plaintiffs' post-judgment enforcement activity is their motion to hold the defendants in contempt for non-compliance with the medical-settlement agreement.  As previously discussed, the plaintiffs filed the contempt motion after the healthcare monitor had completed five consecutive reports indicating non-compliance and after mediation and informal correspondence did not resolve the issue. Before the court heard evidence on the contempt motion, the parties announced they had reached a private settlement agreement.  The court consequently denied the contempt motion as moot.

Although the contempt-motion settlement overall did not require (nor did it receive) the court's approval, one provision of the settlement was that the neutral healthcare monitor would be replaced. That change required the court to modify the medical consent decree, which it did on August 10, 2006. The remainder of the settlement agreement, which this court did not retain jurisdiction to enforce, provided that medical audits would continue under the new healthcare monitor beyond the life of the consent decree. See Settlement Agreement (doc. no. 390-2) at ¶ 1. The settlement specifically stated, however, that the defendants did not admit any of the allegations contained in the plaintiffs' contempt motion. Id. at ¶ 12.

Applying these facts to the Johnson factors for attorney's fees generally and the Cody factors for post-judgment enforcement fees, the court thinks that a partial award of enforcement fees is appropriate. First, the court considers the degree of the plaintiffs' success

in this case as a whole, which is substantial.  Second, the court considers the results obtained from the contempt motion, which are moderate: the extension of the medical audits beyond the life of the decree is a material alteration in the legal relationship between the parties which, though relatively minor in proportion to the serious allegations brought by the plaintiffs in their contempt motion, addresses the plaintiffs' serious concerns regarding the defendants' compliance with the medical consent decree.  Third, the court considers the connection between the issues in the contempt motion and the issues in the underlying court-ordered relief, which is a close one: the plaintiffs' contempt-motion allegations directly implicate the constitutional rights addressed by the medical consent decree.  Fourth, the court considers whether the plaintiffs overlitigated and concludes that they did not: the healthcare monitor's reports of non-compliance unquestionably provided the plaintiffs with a reasonable basis to believe that the

medical consent decree, as well as the underlying constitutional rights addressed therein, were being violated, and it also appears that the plaintiffs undertook a good-faith effort to remedy the situation informally and through mediation before filing their contempt motion.

Based on these considerations, the court concludes that it would be appropriate to credit the plaintiffs for half the time they billed in connection with their enforcement of the medical agreement.  The court also thinks it is important to recognize <u>all</u> of the plaintiffs' enforcement work, and this includes all monitoring fees directly and reasonably incurred in enforcing the decree.  Because the plaintiffs' enforcement action was a direct outgrowth of auditing, non-compliance reports, correspondence, and mediation related to the medical agreement, the court finds that the plaintiffs' medical-monitoring fees are compensable along with their medical-enforcement fees.

Having reviewed the plaintiffs' billing statements as well as the defendants' line-by-line objections, the court finds that the following hours are properly attributable to enforcing the medical agreement and the medical-monitoring work directly leading to the enforcement action: 12.1 hours for attorney Hanlon, 63.8 hours for attorney Kung, 190.3 hours for attorney Rohr, 31 hours for attorney Schulz, and 18.7 hours for paralegal Doctoroff.  Now, applying the 50 % reduction, the court finds that the plaintiffs should recover enforcement fees for the following number of hours: 6.05 hours for attorney Hanlon, 31.9 hours for attorney Kung, 95.15 hours for attorney Rohr, 15.5 hours for attorney Schulz, and 9.35 hours for paralegal Doctoroff.

As previously stated, a reasonable hourly rate for all four of the above-listed attorneys exceeds the PLRA statutory cap of $ 169.50 per hour.  Regarding paralegal support, however, the plaintiffs have not submitted any documentation to support their position that paralegal

Doctoroff's reasonable rate is $ 120 per hour.  This

court has previously stated that $ 75 per hour is "the

rate commonly awarded paralegals by this court."  <u>Hall</u>,

263 F.Supp.2d at 1369.  Therefore, the lodestar amount

for enforcement fees is $ 25,888.95: $ 169.50 multiplied

by 148.6 hours for attorneys, plus $ 75 multiplied by

9.35 hours for paralegal Doctoroff.  The court finds that

no adjustments to the lodestar amount are appropriate and

that  $  25,888.95  represents  the  enforcement  fee

recoverable at this time.


### 4. Expenses

The plaintiffs claim compensable litigation expenses

in the amount of $ 16,063.08.  There are three reasons

they cannot recover nearly that amount.  First, as

previously discussed, the plaintiffs cannot recover

monitoring expenses except those directly and reasonably

related to their enforcement expenses.  Second, their

compensable  expenses  will  be  reduced  in  the  same

proportions that their compensable attorney's fees were reduced: they should recover 65.35 % of their expenses incurred in litigating the issue of attorney's fees, and 50 % of their expenses incurred in enforcing the medical consent decree.   Third, their billing statements for expenses are so poorly documented in terms of descriptions and dates that the court can award recovery only on those items clearly and reasonably compensable in the above categories.

Having reviewed the plaintiffs' billing statements as well as the defendants' line-by-line objections, the court finds that the plaintiffs incurred $ 2,047.55 in expenses on the issue of attorney's fees.   Because the court has decided that the plaintiffs should recover attorney's fees on this issue in proportion to their success in litigating it, supra Subsection III.B.1, the same proportional reduction will be applied to their expenses.   Plaintiffs may recover 65.35 % of their expenses in this category, for a total of $ 1,338.07.

The court also finds that the plaintiffs incurred $ 1,875.40 in expenses enforcing the medical consent decree.  Because the court has decided to allow recovery on only half the hours they properly billed in this category, <u>supra</u> Subsection III.B.3.c, the same reduction will be applied to their expenses.  Plaintiffs may recover half their expenses in this category, for a total of $ 937.70.

In total, the plaintiffs shall recover the sum of $ 1,338.07 plus $ 937.70 in expenses on their second motion, or $ 2,275.77.

### 5. Summary

The court having determined that the plaintiffs should recover attorney's fees and expenses incurred in litigating the fees issue and enforcing the medical consent decree, the final award under the plaintiffs' second motion for attorney's fees is as follows:

105

|  | Hours | Rate | Subtotal |
|---|---|---|---|
| Attorney Felder | 37.84 | $ 169.50 / hr | $ 6,413.88 |
| Attorney Hanlon | 76.82 | $ 169.50 / hr | $ 13,020.99 |
| Attorney Kung | 43.53 | $ 169.50 / hr | $ 7,378.34 |
| Attorney Rohr | 159.52 | $ 169.50 / hr | $ 27,038.64 |
| Attorney Schulz | 55.95 | $ 169.50 / hr | $ 9,483.53 |
| Paralegal Doctoroff | 9.35 | $ 75.00 / hr | $ 701.25 |
| TOTAL HOURS | 383.01 |  | $ 64,036.62 |
| Expenses |  |  | $ 2,275.77 |
| TOTAL FEES |  |  | $ 66,312.39 |

The court adds that the above does not necessarily represent the _final_ enforcement fee. The court's denial of the remainder of the plaintiffs' monitoring-and-enforcement fee request (including expenses) is without prejudice. Should the plaintiffs later seek to enforce the conditions- and medical-settlement agreements, including renewing their contempt motion regarding the medical-settlement agreement, they may be entitled to

106

additional monitoring fees directly and reasonably incurred in enforcing those settlements. That might include hours and expenses that the plaintiffs included in their second motion which the court finds not to be allowable at this time.

                              * * *

    Accordingly, it is ORDERED that the plaintiffs' motions for attorney's fees and expenses (doc. nos. 344 & 394) are granted to the following extent:

    (1) On their first motion, the plaintiffs shall have and recover from the defendants $ 420,369.73 in fees and $ 51,496.02 in expenses, plus interest running from August 23, 2004.

    (2) On their second motion, the plaintiffs shall have and recover from the defendants $ 64,036.62 in fees and $ 2,275.77 in expenses, plus interest running from this date.

    DONE, this the 31st day of August, 2007.

                         ___/s/ Myron H. Thompson___
                         UNITED STATES DISTRICT JUDGE